BROWNE GEORGE ROSS LLP
Keith J. Wesley (State Bar No. 229276)
  kwesley@bgrfirm.com
Ivy A. Wang (State Bar No. 224899)
  iwang@bgrfirm.com
2121 Avenue of the Stars, Suite 2800
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697

Attorneys for Plaintiff Atari Interactive, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| ATARI INTERACTIVE, INC., <br><br> Plaintiff, <br><br> vs. <br><br> SUNFROG, LLC, <br><br> Defendant. <br><br> AND RELATED ACTIONS | Case No. 3:18-cv-04949-JST <br> *[Related to Case Nos. 3:18-cv-03451- JST; 3:18-cv-03843-JST & 3:18-cv-04115-JST]* <br><br> Hon. Jon S. Tigar <br><br> **JOINT CASE MANAGEMENT STATEMENT** <br><br> Date:   October 17, 2018 <br> Time:   2:00 pm <br> Crtrm.: 9 |

Pursuant to this Court's August 30, 2018, Clerk's Notice Setting Case Management Conference, Dkt. No. 19, and following the conference of counsel on September 28, 2018, all parties herein, through their respective counsel, respectfully submit the following joint statement in advance of the October 17, 2018, case management conference.

**1.   Jurisdiction and Service.**

All parties agree that this Court has subject matter jurisdiction and personal jurisdiction. All parties agree that defendant SunFrog, LLC ("Defendant") has been served. Defendant has not yet responded to the complaint. (Defendant has until October 16, 2018 to respond to the complaint.)

**2.   Facts.**

**A.   Plaintiffs' Summary of the Facts**

Plaintiff Atari Interactive, Inc. ("Plaintiff" or "Atari") is one of the most famous video game brands in history. Founded in the early 1970s in California, Atari became the pioneer in the video game industry during the 1970s and continuing into the 1980s, developing and releasing (a) home video consoles – e.g., the Atari 2600 – that set new standards in design and function, and (b) a series of hit games – e.g., Pong, Breakout, Asteroids, and many others. Atari became known to relevant consumers and the public at large by its inherently distinctive trade name, as well as its inherently distinctive A-shaped or "Fuji" logo design.

Atari has marketed, promoted, licensed, and sold products, including a catalog of more than 200 well-known games, worldwide under the Atari name and logo for over four decades. Atari also has an active licensing business through which Atari has extended its brand into other media, merchandising, and publishing categories. It goes without saying that video gamers – new and old – recognize and revere Atari's place as a very well-known and iconic pioneer of the video game industry.

/ / /

Accordingly, the Atari name, logo, and classic video games are valuable intellectual property owned by Atari, and Atari has taken significant steps to protect them from infringement.  Atari obtained registrations with the United States Patent and Trademark Office for many of its trademarks and registrations with the United States Copyright Office for many of its copyrights.  Through commercial use and contractual agreements with its predecessors-in-interest, Atari is the owner of USPTO Registration No. 4,214,210 for the ATARI name and logo used in connection with, among other things, "printed matter, namely posters, stickers" and "articles of clothing"; and Atari is the owner of USPTO Registration No. 4,324,638 for the PONG name used in connection with, among other things "printed matter, namely posters, stickers" and "articles of clothing."

Through contractual agreements with its predecessors-in-interest, Atari is also the owner of multiple copyright registrations for, among others, the following video games, including the visual elements thereof:  *Centipede, Asteroids*, *Pong*, *Breakout*, *Missile Command*, *Adventure*, *Combat*, and *Yar's Revenge*.  Through extensive and continuous promotion and sales, unsolicited press, and word of mouth, Atari also owns common law rights in various trademarks and trade dress, including the Atari name and logo, the *Centipede, Asteroids*, *Pong*, *Breakout*, *Missile Command*, *Adventure*, *Combat*, and *Yar's Revenge* names and graphics, and the overall look and feel of the Atari 2600 game console and joystick.

Atari understands and believes that Defendants operate an online marketplace through their website, www.teepublic.com, where visitors can upload designs that Defendants then display on a variety of apparel – from t-shirts to phone cases to stickers – pictured on the site.  Defendants offer for sale the products on display.  If a visitor to the site orders a product, Defendants make, ship, and process the payment for the product.  Defendants then split the profits with the person who originally uploaded the design.

/ / /

This year, as part of its intellectual property enforcement efforts, Atari discovered that Defendants were advertising, marketing, creating, displaying, and offering for sale a variety of counterfeit Atari products. Many of the counterfeit products incorporated exact replicas of the registered ATARI trademark (name and logo) on products in the classes for which the marks are registered. Other counterfeit products incorporated easily identifiable depictions of the Atari 2600 console and joystick with the distinctive red button, or designs from Atari's copyrighted video games.

Atari thus sued Defendants for trademark infringement, counterfeiting, copyright infringement, trademark dilution, false designation of origin, unfair competition, contributory trademark infringement, contributory copyright infringement, vicarious trademark infringement, and vicarious copyright infringement. Atari seeks actual damages, Defendants' wrongful gain, statutory damages, treble damages, punitive damages, attorney's fees and costs, and permanent injunctive relief.

### B. Defendants' Summary of the Facts

Started in 2013, SunFrog has provided an increasingly sophisticated website that streamlines and automates the creation of t-shirts, sweatshirts, tights, and hats featuring graphics and text uploaded by its users. When users upload designs and/or text, they can also choose from a variety of colors and styles of apparel with which their designs will be paired. When a user's design is paired with a clothing item, a mockup showing how the item would look appears on SunFrog's website and is associated with that user (a "Mockup"). SunFrog's website allows users to set the price of their Mockups within a pre-set range. SunFrog's automated printers do not print anything until a user views a Mockup and purchases it. When a user purchases an item, SunFrog facilitates the transaction, remits a portion of the purchase price to the designer, and retains a portion of the purchase price as its service fee.

/ / /

SunFrog does not create, upload, or curate the Mockups listed on its website. It cannot manually review the roughly twenty million Mockups, with thousands added daily, uploaded by its users. Even if SunFrog could review each Mockup, it would be impossible to determine whether the user who uploaded that design did so with or without the consent of any presumed rights holder. Users who create Mockups on SunFrog's website must affirmatively check a box stating that they are not violating the intellectual property rights of any third parties by uploading and selling Mockups through SunFrog's website. SunFrog reserves the right to terminate users for misrepresenting that they own rights to a Mockup when they do not, and SunFrog frequently terminates repeat infringers. When SunFrog terminates a user, it blocks the email address associated with the financial service provider that bad actor used to collect money from sales through SunFrog's website. Blocking repeat infringers in this way makes it much more difficult for those users to create a new account because they would have to setup a new account with a financial service provider.

While SunFrog has been active since 2013, it experienced explosive growth during the past few years. With such growth came a slew of publicity and a slew of lawsuits. SunFrog has worked to develop tools that not only keep pace with the demand created by users wanting to create and upload Mockups, it has worked to develop tools to curb intellectual property infringement and give rights holders the ability to notify SunFrog of allegedly infringing Mockups with ease. One recent example is the evolution of SunFrog's online infringement reporting tool, which now allows rights holders to report multiple allegedly infringing links at once. Even though each reported link must be reviewed by someone working for SunFrog who has been trained to understand fair use and other thorny intellectual property issues while a rights holder may submit hundreds of links for review at once, reported links are removed, for the most part, within two days if removal is appropriate. Many links to allegedly infringing Mockups are disabled within hours of being reported.

Case 3:18-cv-04949-JST   Document 21   Filed 10/09/18   Page 6 of 11

1  The vast majority of Mockups, including allegedly infringing Mockups, never result
2  in a single sale.  Another tool developed by SunFrog to protect rights holders allows
3  for the profits from allegedly infringing items to be diverted from bad actors'
4  accounts into rights holders' accounts.

5       SunFrog asserts that it has complied with the notice and takedown
6  requirements under both trademark law and copyright law and may take advantage
7  of the safe harbor offered under both trademark case law and the Digital Millenium
8  Copyright Act.  Further, SunFrog asserts that it goes beyond those requirements to
9  affirmatively police its platform for infringement and has done so in this case.
10 SunFrog asserts that it has not made a trademark use of Plaintiff's purported marks
11 and that there is no likelihood of consumer confusion.

12      In this case, SunFrog has reviewed the information provided by Atari in its
13 Complaint and has confirmed that no sales were consummated as a result of the acts
14 complained of by Atari.  Said another way, SunFrog believes that Atari's damages
15 in this case are $0.

16 **3.**     **Legal Issues.**

17     **A.**     **Plaintiff's Summary of the Key Legal Issues**

18      At this early stage, Plaintiff anticipates the key legal issues will be the
19 following:

20 • Does Atari own valid trademarks and copyrights?
21 • Did Defendants infringe upon any of Atari's trademarks and
22    copyrights?
23 • Did Defendants infringe willfully and/or with malice, fraud, or reckless
24    disregard for Atari's rights?
25 • What amount of damages – whether actual damages, wrongful profits,
26    statutory damages, and/or punitive damages – should be awarded to
27    Atari?
28 / / /

- Is any party entitled to attorneys' fees and costs, and, if so in what amount?
- Is Atari entitled to permanent injunctive relief, and, if so, in what form?

### B. Defendants' Summary of the Key Legal Issues

Defendant anticipates the key legal issues will be the following:

- Does Atari own valid trademarks and copyrights?
- Did Atari provide adequate notice to SunFrog of its rights and of the alleged infringement of which it complains?
- Is SunFrog protected as a service under the DMCA's safe harbor provisions?
- Is SunFrog protected under the precedent of *Tiffany v. eBay*?
- Did SunFrog have knowledge of specific instances of infringement occurring on its service and, upon receiving such knowledge, fail to act to cease such infringement?
- Has Atari abandoned its trademark rights?
- Were Atari's trademark rights properly assigned?

### 4. Motions.

The parties anticipate they will file motions for summary judgment or partial summary judgment. Defendant may file a motion to dismiss.

### 5. Amendment of Pleadings.

At this time, no party anticipates amending the pleadings. To the extent Atari discovers, through the discovery process or its own further investigation, additional trademarks or copyrights that it believes Defendants infringed or additional persons or entities responsible for the alleged infringement, then Atari will likely seek to amend the complaint to include those additional trademarks or copyrights or defendants at that time.

/ / /

/ / /

6. **Evidence Preservation.**

The parties have reviewed the ESI Guidelines and confirm that they have met and conferred regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evidence in this action.

7. **Disclosures.**

The parties have agreed to exchange initial disclosures on or before October 31, 2018.

8. **Discovery.**

The parties have discussed the discovery they anticipate serving. Each side anticipates noticing depositions of Rule 30(b)(6) representatives and serving written discovery in the form of document demands and perhaps interrogatories or requests for admissions. The parties may notice additional depositions – e.g., depositions of witnesses disclosed in initial disclosures – but require additional information before determining the scope of those additional depositions. The parties contemplate entering into a stipulated protective order protecting certain confidential and commercially sensitive information that may be disclosed in discovery. Counsel have, to date, worked collaboratively and professionally together, and they will endeavor to do so throughout the discovery process so as to avoid unnecessary motion practice.

9. **Class Actions.**

This is not a class action.

10. **Related Cases.**

This case is related to three other cases currently pending before this Court: *Atari v. Redbubble*, *Atari v. Zazzle*, and *Atari v. TP Apparel et al*.

11. **Relief.**

Atari seeks actual damages, Defendants' wrongful gain, statutory damages, treble damages, punitive damages, attorney's fees and costs, and permanent injunctive relief. The amount of actual damages and wrongful gain requires

additional discovery. To remedy trademark counterfeiting, Title 15, U.S.C. section 1117(c) provides for $1,000 to $200,000 in damages per counterfeit mark infringed for non-willful infringement, and up to $2 million in damages per counterfeit mark infringed for willful infringement. To remedy copyright infringement, Title 17, U.S.C. section 504 provides for $750 to $30,000 in damages per copyright infringed for non-willful infringement, and up to $150,000 in damages per copyright infringed for willful infringement.

**12.   Settlement and ADR.**

The parties have agreed to mediation with a Magistrate Judge as their preferred form of ADR. The parties have engaged in some informal settlement discussions, but no settlement appears possible at this juncture.

**13.   Consent to Magistrate Judge for all Purposes.**

The parties have not consented to a Magistrate Judge for all purposes.

**14.   Other References.**

The parties do not believe any other references are appropriate at this time.

**15.   Narrowing of Issues.**

At this time, the parties do not believe there are issues that can be narrowed by agreement or motion. As stated above, the parties respectively intend to move for summary judgment or partial summary judgment after obtaining discovery.

**16.   Expedited Trial Procedure.**

The parties do not believe this case is appropriate for the Expedited Trial Procedure of General Order No. 64 Attachment A.

**17.   Scheduling**

    **A.   Plaintiff's Proposed Schedule**

| | |
|---|---|
| Trial: | September 23, 2019 |
| Pretrial Conference: | August 30, 2019 |
| Last Day to Hear Dispositive Motions: | July 18, 2019 |
| Discovery Cutoff: | June 17, 2019 |

| | | |
|---|---|---|
| | Last Day to Designate Experts: | April 1, 2019 |
| | Last Day to Designate Rebuttal Experts: | May 1, 2019 |

**B.    Defendant's Proposed Schedule**

| | |
|---|---|
| Trial: | February __ , 2020 |
| Pretrial Conference: | December 16, 2019 |
| Last Day to Hear Dispositive Motions: | November 15, 2019 |
| Discovery Cutoff: | August 8, 2019 |
| Last Day to Designate Experts: | September 6, 2019 |
| Last Day to Designate Rebuttal Experts: | September 20, 2019 |
| Expert Discovery Cutoff: | October 18, 2019 |

**18.    Trial.**

Plaintiffs have demanded a jury.  Plaintiffs expect a 5-7 day trial.

**19.    Disclosure of Non-Party Interested Entities or Persons.**

Plaintiffs have filed their Certification of Interested Entities or Persons required by Civil Local Rule 3-16.

**20.    Professional Conduct**

Counsel have reviewed the Guidelines for Professional Conduct for the Northern District of California.

Respectfully Submitted:

Dated:  October 9, 2018              BROWNE GEORGE ROSS LLP
                                                             Keith J. Wesley
                                                             Ivy A. Wang

                                                By:      */s/ Ivy A. Wang*
                                                             Ivy A. Wang
                                                Attorneys for Plaintiff Atari Interactive, Inc.

/ / /

/ / /

Dated: October 9, 2018

Nicholas Ranallo

By: _/s/ Nicholas Ranallo_
Nicholas Ranallo
Attorneys for Defendant SunFrog, LLC